THOMAS HARWOOD et al. *v.* H. M. & R. J. COLSON.

**Administrator — Chargeable with Interest on Moneys Collected — Claims Due Him as Offset.**

> An administrator is not chargeable with interest on moneys collected for the estate, where it is shown that claims due to him as an individual will more than offset such interest.

**Same — Collusion and Fraud.**

> A mere discrepancy in account between an administrator and his broker, through whom all moneys of the estate were handled, where his final account rendered shows the proper receipt and application of moneys received by him, will not support a charge of collusion and fraud between the parties.

C. L. Barrett was a creditor of Benj. Harwood, who died intestate, and as such creditor filed a petition in the Chancery Court of Claiborne county to be appointed administrator of the estate of deceased, which consisted of a claim against the United States government for cotton taken during the Civil War. Letters of administration were issued, and the administrator, upon the execution of a proper bond, was duly qualified. His account as rendered showed receipt, on October 5, 1875, of .$6,462.76, less ⅜ per cent. exchange, $24.23, leaving a net amount received, $6,438.53. Various small claims were paid out of same, amounting to $873.80, which also included court costs, 5 per cent. administration fee; all of which claims were duly probated and allowed. There were also probated and allowed two claims, amounting to $445, as attor-

ney fees for defending suits against the estate. A judgment in favor of William McD. Sims was recovered against the estate, amounting to $4,659.97, which was compromised by the administrator upon payment of $3,500 in full settlement. The administrator held a note against the estate executed by deceased July 5, 1869, which, with interest up to date of rendering of first account, amounted to $1,287.56. The administrator also held a decree rendered in the Chancery Court February 27, 1873, of a balance due of $828.68, and interest of $208.10, making a total of $1,036.78. There was paid on these claims of the administrator $1,647, as shown in the final account. Exceptions were filed by Thomas Harwood et al. to the said final account in that the money received for the estate was deposited with J. Burbett & Co., New Orleans, La., and no interest was paid thereon, nor was said money loaned out to the best interest of the heirs, and that by reason thereof the said heirs were defrauded, and that the said administrator did falsely apply payments to his personal account. The exhibits to the testimony offered showed the statement of account of the administrator upon which no interest was credited, and the payments were not in the sums in like amounts as shown by said final account. This exhibit also showed other moneys received and paid out by said administrator, his personal account being mixed with that of C. L. Barrett, administrator. The total amount of claims probated against the estate amounted to $7,250, principal, and interest aggregating $1,250. One of said claims, amounting to $1,306, was disallowed, being barred by the Statute of Limitations. Shortly after the rendering of the final account C. L. Barrett died, and appellees were appointed administrators, and the action revived against them. The exceptions having been overruled, complainants appeal.

APPEALED from Chancery Court of Claiborne county, RALPH NORTH, Chancellor.

Affirmed, June 9, 1884.

*Attorney for appellants, J. McC. Martin.*

*Attorney for appellee, E. S. Drake.*

Brief of J. McC. Martin:

\* \* \* Questions involved in this appeal may be briefly considered under two heads, to wit: 1. Should the pretended final account of the administrator, in view of the evidence, be allowed? 2. Is said administrator chargeable with compound interest on the money of said estate received by him? If so, from what date, and at what rate of per cent.? \* \* \*

The rules which fix an administrator's liability for interest on the money and funds of the estate, as applicable to this case, are five in number, to wit: illegal disbursement; removing and lending funds of estate; improperly withholding, and not accounting for receipts; using the money of the estate for his own purpose; and mingling the funds of the estate with his own.

" If the administrator makes illegal disbursements, or if he lends the notes, or bonds of the estate, he is liable for interest." Carson v. Carson, 31 Miss. 596; Crowder v. Shackleford, 35 Miss. 360.

. C. L. Barrett paid, October 19, 1875, discount on Riggs check, without authority of law, nor does he exhibit a voucher. He also pays L. Unger, September 6, 1875, $2.50, which was illegal, and, lastly, he pays C. H. & C. L. Barrett's claims on note and decrees, without taking a receipt, and without proper proof of their claim under said decree. Besides he illegally sends the money of the estate to New Orleans, deposits it with Bennett & Co., who mingled the same with their own funds, in Canal Bank, and draw against it in the general course of their business. This is in effect a loan to said firm, though not so intended.

If the administrator fails to account for receipts or improperly retains same, or if he uses the money of the estate for his private purposes, he is chargeable with interest thereon, at the highest legal rate; for the trustee is not permitted to speculate and make a profit upon the funds in his hands; or if he mingles the funds of the estate with his own he is so liable. Carson v. Carson, 31 Miss. 596; Crowder v. Shackleford, 35 Miss. 360; Cole v. Leake, 5 Cush. 771; Anderson v. Gregg, 44 Miss. 182; Powell v. Cooper, 42 Miss. 221, 227; Satterwhite v. Littlefield, 13 S. & M. 306; Kerr v. Laird, 5 Cush. 550, 551. When a trustee uses a trust fund for his own benefit, and has made, or there is ground to infer that he has made, a profit, he is liable for compound interest. Troupe v. Rice, 55 Miss. 298. \* \* \*

\* \* \* " No administrator shall remove the property of the estate, of which he has charge, out of the limits of the estate,"

etc. Rev. Code 1871, § 1186; Bridges et al., Exrs. *v* Maxwell, etc., 34 Miss. 314. Notwithstanding the statutory inhibition, the administrator does so remove the funds of the estate. He does so as early as October 19, 1875; then, within less than three months thereafter, he commences to use the money. In 1875 he uses $2,101.70, and, in less than five months, from said October 19th, he uses, in 1876, $2,851.50 more, making a total use, by him, within the twelve months from grant of letters, of $4,952.20. In the interim, and subsequent thereto, J. Bennett & Co. are using same. * * * Hence said administrator is chargeable with compound interest, on said money on said estate received by him, from October 19, 1875, and from the respective dates of the respective receipts, at the rate of 10 per cent., with annual rests, the disbursements being first credited on the interest due by the administrator at the time they were made, and the surplus, if any, on the principal. Carson *v.* Carson, 31 Miss. 595 *et seq.*

* * * A pretended claim of C. H. & C. L. Barrett is registered, in the aggregate, at $1,548.84, and although, as shown by Vertner's testimony, this had been previously paid out of funds withheld by C. L. Barrett, and although there is no legal proof that anything was due on the $828.28 claimed as balance on chancery decree, or that the same was ever paid to " C. H. & C. L. Barrett," yet, as of the date of the final account, he claims credit for $1,647 pretended to be paid on said claim. Thus said administrator uses $6,462.76 to pay registered claims, amounting to $5,454.04, embarks money of the estate in cotton future speculations, uses the same for his private purposes, withholds and conceals receipts, accounts for no interest, pays illegal claims, represents the estate to Drake and Vertner as insolvent, and then claims that he has judiciously administered the estate. The whole records show a fraudulent use of the funds of the estate and a fraudulent concealment of money belonging to the same, whereby said administrator, with no appraisement or inventory to show the assets of the estate, calculated on reaping large profits.


Brief of Lauch McLaurin:

* * * Since writing the above I find that counsel with whom I am associated in this case has prepared an elaborate brief, and I will confidently rely upon that as a full presentation of the case.

Brief of E. S. Drake:

* * * C. L. Barrett, as a member of the firm of C. H. & C. L. Barrett, could receive àny debt due the firm and bind the firm by receipt. He had an equal right to *retain* any debt due the firm. He did retain $1,647 of this debt due the firm of C. H. & C. L. Barrett, and his charging the estate of Harwood with it is tantamount to a receipt. But counsel says C. L. Barrett did not divide the $1,647 with C. H. Barrett. There is no evidence of this, but if it were true it would be a matter about which the heirs of C. H. Barrett alone could complain. So that this exception was properly overruled.

Was the administrator properly chargeable with interest on $6,432 received by him as the money of Harwood and with which he credits the estate in his accounts? We are unable to find any facts or circumstances in the record of this case which brings the above within the rule. The rule as laid down in Troup *v.* Rice is correct and is a summary of the law on that subject. If the administrator has used the funds of the estate in his private business and made a profit for himself, or if he has without cause unreasonably delayed a settlement of the estate, he is chargeable with interest. * * *

* * * *There is, in fact, not one iota of proof that Barrett ever got any money or property belonging to the Harwood estate,* except what he admits by his accounts he received. There is absolutely no other evidence *in the record* or elsewhere (except the imagination of counsel) to show that Barrett received any money of Harwood. * * *

* * * C. L. Barrett wrote J. Burbett & Co. of New Orleans a letter, enclosing them an exchange on New York for $6,462, and requesting them to credit him individually with the net proceeds thereof and to hold the same on special deposit subject to check, the account to be kept with him as administrator. Administrator of what or whom, witnesses did not know. Exhibit " J," page 73, shows that on October 19, 1875, J. Burbett & Co. credited " C. L. Barrett Administrator " with net proceeds of check of Riggs & Co., $6,432.53. * * *

* * * These are the facts and the only facts from which counsel *infer* (for there is no direct proof that he used the money) that Barrett used the money in his own business and for his own profit. The court below very properly refused to indulge in this

very violent presumption.    Other equally reasonable presumptions consistent with the honesty of the administrator might be indulged in.   *   *   *

*   *   *   We introduce ample testimony to show the good faith of the administrator and that the estate was wisely and judiciously managed.    We show by testimony of Drake that he resisted the claims of McLean and Sims by advice of counsel.    The record shows that the McLean suit was brought six or seven months after administrator first received funds; that it ripened into judgment in November, 1876; that Sims brought suit to that same term (November, 1876) and recovered judgment at following term (June, 1877); that an appeal was contemplated from this judgment, but abandoned when Sims compromised at $3,500.

*   *   *   It is attempted here in this court for the first time to raise a third point, to wit: That the executor embezzled over $3,200 of the estate.    I shall show in reply to this:  1. That there is no evidence whatever to show that he received any money of Harwood estate other than the $6,432.53 credited in his accounts. 2. Even if the record did disclose any evidence on this point, yet the *laches* of the appellants would prevent their taking advantage of it here.    The record discloses no evidence from which this court can presume that Barrett ever received a dollar except the $6,-432.53 with which he credits the estate.    *   *   *

*   *   *   If administrators are to be presumed embezzlers and perjurers on such testimony, who will undertake to administer an estate?

### OPINION.— PER CURIAM:

After careful attention to the several grounds urged by counsel for the appellants for the reversal of the decree in this case, the only one which induced hesitation was the question of the liability of the administrator, Barrett, for interest on the money of the estate, and upon full consideration of that question our conclusion is that the decree should not be disturbed.

It is doubtful whether the administrator was chargeable with interest on any portion of the money, but, conceding that he was, a computation shows that the interest with which he might be charged falls short in amount of the sum due on his own claim, and which he failed to realize because of the insufficiency of the estate.

The complaint that he put the money out of this State, and that it was "mixed" with other funds in the Canal Bank, is without merit.

The ⅜-per cent. exchange was properly deducted from the Riggs & Co. check. The complaint of embezzlement is not supported by evidence. It has no semblance of foundation except the exhibit of the dealings of the administrator with J. Burbett & Co., and that is insufficient to maintain the charge.

Decree *affirmed.*